**Floyd E. WASHINGTON, Appellant,**

v.

**Dale C. CAMERON, Superintendent, St. Elizabeth's Hospital, Appellee.**

**No. 21071.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1968.

Decided March 4, 1969.

Petition for Rehearing Denied
June 18, 1969.

Mr. Donald P. Zeifang, Washington, D. C. (appointed by this court) for appellant. Messrs. Brian Michael Olmstead, Anthony Zell Roisman and Mrs. Florence Wagman Roisman, Washington, D. C., also entered appearances for the appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and E. Grey Lewis, Asst. U. S. Attorneys, were on the brief, for appellee.

Before BURGER, TAMM and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

The appellant, Floyd E. Washington, was employed by St. Elizabeths Hospital (hereinafter "Hospital" or "Superintendent") as a nursing assistant from July, 1961, to March 3, 1965, at which time he was escorted from the grounds of the hospital by the guard force and placed on enforced sick leave by the Superintendent. On that same day the Hospital applied to the Department of Health, Education and Welfare for appellant's disability retirement. This application was forwarded to the Civil Service Commission (hereinafter "Commission") for determination and pending the outcome thereof, the appellant was placed on enforced annual leave commencing April 20, 1965. While still awaiting the outcome of the Commission's decision, the appellant was placed on leave without pay by the Hospital effective June 5, 1965. On September 28, 1965, the Commission notified the Department of Health, Education and Welfare that the Hospital's application had been approved and also notified the appellant of the determination that he had been found totally disabled for useful service and that he would be retired from service on an annuity. On November 8, 1965, the appellant appealed this determination to the Commission. Upon consideration of the appeal the Hospital's application was affirmed and the appellant separated from service effective January 24, 1966. Mr. Washington then filed a petition for relief in the nature of mandamus in the District Court.

The central feature of the appellant's complaint in the trial court is that the Superintendent of the Hospital wrongfully discharged the appellant without notice or hearing as required by either the Lloyd-LaFollette Act, 5 U.S.C. § 7501 (Supp. III 1965-67), or the Veterans Preference Act, 5 U.S.C. § 7512 (Supp. III 1965-67). The complaint sought reinstatement and back pay from March 3, 1965. The Hospital answered the complaint on April 28, 1966, and defended on the ground that the complaint failed to state a claim upon which relief could be granted. Appellant thereafter served certain interrogatories on the Hospital requesting it, inter alia, to state the names of those in the Hospital's employ that were, in any way, connected with the discharge of the appellant and to state what circumstances led up to such a determination; from what disease or illness was the appellant suffering; who made that determination; upon what basis and certain other inquiries as to the incidents leading up to the appellant being placed on enforced sick leave. The Hospital objected to these interrogatories on the ground that they were irrelevant to the issues before the court. The appellant replied to these objections on September 30, 1966. Two months later the Superintendent filed a motion to dismiss, or in the alternative, for summary judgment. This motion was opposed by the appellant on January 10, 1967.

In the interim, between the filing of the motion for summary judgment and the appellant's response thereto, the Pre-

trial Examiner recommended that appellee's objections to the interrogatories be sustained. On February 10, 1967, the trial court, following the recommendations of the Pre-Trial Examiner by overruling the appellant's objections thereto, took the appellee's motion for summary judgment under advisement. On February 28, 1967, that motion was granted in favor of the appellee and Mr. Washington appealed to this court.

After considering the points of the Government on appeal and concluding that since it is the business of the court to accord substantial justice, under the law, to both parties, appellant should be given an opportunity to explore his case in an effort to formulate genuine issues of material fact in order to properly meet the appellee's motion for summary judgment. An appraisal of each of the Government's points, in light of the Federal Rules of Civil Procedure and Title 28 of the United States Code, must lead to the conclusion that the learned trial judge was somewhat precipitous in granting the motion for summary judgment. Accordingly, we rule that the trial court's decision be reversed and the case remanded with instructions to permit discovery.

■ The Government's first point is that the appellant's failure to join the members of the Civil Service Commission as indispensable parties ousts the court of jurisdiction under Rule 19(b) of the Federal Rules of Civil Procedure. The Government's position is that it was the Commission that finally determined the appellant's dismissal and that any relief in the lower court would necessitate action on the part of the Commission. It cites, as authority for the point, the case of Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952), and the cases of this court in accord therewith.[1] However, a reading of these cases indicates that they dealt primarily with injunctive

relief against the Civil Service Commission and failure to serve the individual members thereof was held to be fatal to those petitioners' cases.[2] The Supreme Court said in Blackmar that "[s]ince the members of the Civil Service Commission were never served * * * it follows that the only defendant before the court was Guerre, and, as we have pointed out, no relief could possibly be granted against him in these proceedings." Id. at 516, 72 S.Ct. at 412. What the Government failed to see is that the petition of the instant case sought relief in the nature of mandamus directed, not at the Civil Service Commission, but at the Superintendent of the Hospital arising out of his alleged wrongful act of placing the appellant on enforced sick leave without notice. In this case, unlike Blackmar, relief might "possibly be granted" in the absence of the Commission.

Rule 19(b) of the Federal Rules of Civil Procedure sets out what determinations must be taken account of in deciding the indispensability of a party. It includes: "first, to what extent a judgment rendered in the [party's] absence might be prejudicial to [it] or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief * * * the prejudice can be lessened or avoided; third, whether a judgment rendered in the [party's] absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Meeting each of these considerations, suffice it to say that any prejudice resulting to the Commission will be incidental to the main relief here requested. A judgment in favor of the appellant will be directed at the Superintendent; namely, to reinstate the appellant, void the action of March 3, 1965, and thereby render moot the determinations of the Commission in that regard. In this way the relief could be

---

1. Bovard v. Young, 105 U.S.App.D.C. 241, 265 F.2d 823 (1959) ; Hicks v. Summerfield, 104 U.S.App.D.C. 286, 261 F.2d 752 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 798, 3 L.Ed.2d 766 (1959).

2. The Civil Service Commission is a nonsuable entity and therefore service must be had on the individual members.

"shaped" to avoid prejudicing the Commission's rights. The relief accorded the appellant would be adequate because his reinstatement would be as of March 3, 1965, and not merely January 24, 1966, the effective date of dismissal by the Commission. Finally in this regard, should the appellant's case be dismissed for nonjoinder he might be left remediless in view of the possibility of laches. However, the question of whether the Civil Service Commission is an indispensable party need not be decided. Assuming, arguendo, the Commission is indispensable, the omission can be readily corrected without undue burden on the Government by remand and the allowance of an amendment to the pleadings under Federal Rule 15(c) (2) of Civil Procedure. The original service of process placed the Government on at least constructive notice of the substance of the relief sought and therefore the Commission "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against (it)" FED.R.CIV.P. 15(c) (2).

■ The Government argues in the alternative that appellant's behavior on the job at the hospital created "an emergency situation" justifying his removal by the Superintendent without 30 days notice as provided in 5 C.F.R. §§ 752.202(a) and (c) (1968). The Government does not dispute the ample authority requiring such notice before a qualified employee can be placed on enforced sick leave.[3] However, they invite this court's attention to Hart v. United States, 284 F.2d 682 (Ct.Cl.1960), as authority for the proposition that should an employee under the Veterans' Preference Act (or the Lloyd-LaFollette Act) conduct himself so as to endanger himself or others while performing his duties, an emergency situation exists, thereby waiving the necessity of notice before suspension. Without deciding the

correctness of that position specifically, we note that the trial court apparently[4] found that an emergency situation did exist and, following the reasoning in Hart, granted summary judgment. If this be so, we hold that the question of "emergency situation" is certainly a question of material fact most obviously in issue and the granting of summary judgment was error.

■ It is axiomatic that should a genuine issue of material fact exist in a dispute, the case cannot be ripe for disposition via summary judgment. The Government asserts that there existed, on March 3, 1965, an emergency situation entitling the Superintendent to dispense with the notice requirement. The appellant defends that no such situation existed and his suspension was wrongful in light of the applicable statutes. "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." (Citations omitted.) Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944). So goes the Supreme Court's view of Rule 56 and this court has followed suit in Underwater Storage, Inc. v. United States Rubber Co., 125 U.S.App.D.C. 297, 371 F.2d 950 (1966), cert. denied, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967), where the court held that the "general rule that guides the District Court in the disposition of motions for summary judgment is that the moving party has the burden of showing the absence of any genuine issues as to * * * material facts." Id. at 300, 371 F.2d at 953. This court went on to quote Wittlin v. Giacalone, 81 U.S.App.D.C. 20, 154 F.2d 20 (1946) for the proposition that "one who moves for summary judgment has the

3. Kenny v. United States, 145 F.Supp. 898, 134 Ct.Cl. 442 (1956) ; Armand v. United States, 136 Ct.Cl. 339 (1956) ; Taylor v. United States, 131 Ct.Cl. 387 (1955).

4. The order granting summary judgment is silent in this respect.

burden of demonstrating clearly the absence of any genuine issue of fact, and that any doubt as to the existence of such an issue is resolved against the movant. The courts are quite critical of the papers presented by the moving party, but not of the opposing papers." *Id.* at 21–22, 154 F.2d at 21; Underwater Storage, *supra* at 300, 371 F.2d at 953. It is within this framework that we must view the proceedings of the trial court in its disposition of this case.

While the order of the trial court is silent as to the reasons why it granted the Government's motion, it is reasonable to conclude that it did so on a finding of "emergency situation." This finding was made solely on the administrative record brought in by the Government without providing an opportunity to the appellant to explore that record and its reasonings by way of interrogatories. The appellee below contended that the appellant's behavior on March 3, 1965, was such that he was a danger to himself and to others. Its support for this position is the administrative record on this man in the Civil Service files. The appellant, on the other hand, contends that his condition was not such that would require "emergency" action and requests answers to interrogatories directed at that issue. The trial court apparently took a broad view of the administrative record, denied interrogatories intended to dispute the record, and granted summary judgment in favor of the movant solely on that record. This procedure does not conform either with the Rules or the indicated judicial authority as we view them.

While interrogatories are not "depositions," they are exploratory devices intended to uncover facts so that the propounder may thereafter prove his law suit.[5] The appellant here did not seek to establish issues of fact on the face of the interrogatories or their answers. He sought merely to explore the answer of the Government and the information in its possession in an effort to make out a case in his favor. For example, interrogatory No. 3 requests the appellee to submit names of all persons who submitted medical reports or examinations regarding the appellant which led up to his dismissal. The interrogatories also sought to discover all significant facts and circumstances which triggered the finding of "emergency" situation. In the court below each and every interrogatory was objected to on the ground that the court, in a civil service discharge case, is limited in its review to the boundaries of the record and cannot go beyond it and conduct a *de novo* review of the facts. The inherent error in this argument is that the learned trial judge was not sitting in review of an administrative record wherein a regulatory body had fairly heard the positions of both sides and ruled, thereby binding the reviewing court to traditional inquiry of an administrative proceeding. To the contrary, the trial court was sitting in review of an *ex parte* administrative decision by the Superintendent of St. Elizabeths Hospital (a decision resting upon a finding of an "emergency" situation for its validity) wherein neither notice nor hearing was afforded the appellant. It therefore follows that the duty of the trial court was to decide one question; namely, did an emergency situation exist on March 3, 1965? In deciding that issue fairly the court cannot rely merely on the one-sided and challenged record of the Commission. Rule 56 is clear that the "judgment sought shall be rendered forthwith *if* the pleadings, depositions, *answers to interrogatories* and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis supplied.) FED.R.CIV. P. 56(c). It seems clear that this case must be remanded in order to accord ap-

---

5. Town of River Junction v. Maryland Casualty Co., 110 F.2d 278, 134 A.L.R. 727 (5th Cir.), cert. denied 310 U.S. 634, 60 S.Ct. 1077, 84 L.Ed. 1404 (1940).

pellant a fair hearing developed by discovery on the issue of emergency.

 This holding in no way supports the view that a mere request for answers to interrogatories will operate to bar the trial court from acting on a motion for summary judgment. It is incumbent upon the party seeking answers to demonstate that his inquiry is directed toward establishing the "material facts" and that upon receipt of those answers he will be armed to defend against that motion. This holding does not support harassment tactics or requests for information that is equally accessible to both parties. We simply decide this case on its facts as applied to our reading of Rule 56(c).

The final point of the Government's brief is that even assuming that appellant's removal was wrongful he is not entitled to back pay for his period of suspension on the ground that he has been neither ready, willing nor able to perform his duties as a nursing assistant and therefore, under reasoning of certain Court of Claims cases, should be denied relief in this regard.

 The Government cites the cases of Everett v. United States, 340 F.2d 352, 169 Ct.Cl. 11 (1965); Corrigan v. United States, 153 Ct.Cl. 392 (1961); Armand v. United States, 136 Ct.Cl. 339 (1956); and Nicholas v. United States, 53 Ct.Cl. 463 (1918) for the proposition that the appellant has the burden of establishing his readiness, willingness and ability to perform his duties during the time of his illegal separation. A reading of those cases does not convince us that something new has crept into the law of damages. These cases merely stand for the time-worn doctrine that one who pleads damages must prove both injury *and* loss. It is for the trial court to discern what, if any, damage the appellant suffered; if the appellee is liable; and to what extent. We therefore remand this case to the trial court with directions to proceed in accordance with the views expressed herein.

Reversed and remanded.